UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOSEPH E. POINDEXTER,            )
                                 )
    Plaintiff,                   )
                                 )
    v.                           )   Civil Case No. 08-1883 (RJL)
                                 )
D.C. DEPARTMENT OF               )
CORRECTIONS, *et al.*            )
                                 )
    Defendants.                  )

## MEMORANDUM OPINION
(September 19, 2012) [#74]

Plaintiff Joseph Poindexter ("plaintiff" or "Poindexter") brings this action against two groups of defendants: (1) Pamunkey Regional Jail Authority ("PRJA") and its employees, Superintendent James Willett, Corrections Officer Mark A. Claveau, Corrections Officer Kimberly D. Hopkins, Corrections Officer Thomas L. Eckert, and Grievance Corrections Officer Eugene G. Emelianov (collectively, "Virginia defendants"), in their official capacities; and (2) the District of Columbia (the "District"). Plaintiff seeks declaratory and injunctive relief, in addition to compensatory and punitive damages, for violations of his constitutional rights arising out of plaintiff's imprisonment at the District and Pamunkey Regional Jails. Before the Court is the District's Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. #74). Upon consideration of the parties' pleadings, relevant law, and the entire record herein, the District's Motion to Dismiss is GRANTED.

1

## BACKGROUND

Plaintiff Joseph Poindexter has been a District of Columbia inmate since August 2005. Second Am. Compl. ("Compl.") ¶¶ 20-21, ECF No. 71. On March 17, 2008, however, plaintiff was transferred to and temporarily detained at the Pamunkey Regional Jail ("Pamunkey") in Hanover, Virginia pursuant to an agreement between the District and Pamunkey regarding the housing of District inmates. *Id.* ¶¶ 7, 22.

Upon becoming a District of Columbia inmate in 2005, plaintiff asserts that the District registered him under the incorrect last name of "Leaks"[1] and refused to change its records to reflect his legal surname despite his insistence. *Id.* ¶¶ 30-35. As a result, plaintiff alleges that he was deprived of correspondence from his attorney in violation of his First Amendment right to access the courts. *Id.* ¶¶ 36-37, 53. After he was transferred to and temporarily detained at Pamunkey, the plaintiff contends that the District continued to deprive him of his rights under the Constitution. More specifically, plaintiff alleges that the District violated his Fifth, Eighth and Fourteenth Amendment rights by failing to remedy Pamunkey's allegedly deficient law library despite his complaints and, through the actions of the Virginia defendants, placing him in segregation without notice or a hearing and denying him blood pressure medication, among other things. *See id.* ¶¶ 38-79.

On December 8, 2011, the District moved to dismiss this suit, or in the alternative, for summary judgment. *See generally* District's Mot. to Dismiss or, in the Alt., for

---

[1] Plaintiff alleges that, in 1994, his last name was legally changed from "Leaks" to "Poindexter," and that the District was aware that plaintiff's last name had legally changed. Compl. ¶ 26.

Summ. J. ("Dist.'s Mot."), ECF No. 74. For the following reasons, the District's Motion to Dismiss is GRANTED.

## LEGAL STANDARD

The District moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that it fails to state a claim upon which relief can be granted. In evaluating the District's Motion to Dismiss, the Court must "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citations omitted). Rather, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "[T]he court need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Indeed, where the court cannot infer more than the mere possibility of misconduct from the facts, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks and citation

omitted).

## ANALYSIS

### I. Municipal Liability under 42 U.S.C. § 1983

Petitioner brings this suit against the District and its "agents, assistants or employees," seeking to hold the municipality liable under 42 U.S.C. § 1983 for alleged violations of his First, Fifth, Eighth and Fourteenth Amendment rights.[2]

To state a claim against a municipality under § 1983, however, a plaintiff must plead facts sufficient to allege that: (1) he was deprived of a constitutional or federal right; and (2) such deprivation was the result of a government policy or custom. *Warren v. Dist. of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004). This second requirement not only rebuffs a respondeat superior theory of liability, which would hold a municipality accountable for the torts of its employees, but it also limits the liability of a municipality to its own unlawful conduct, *i.e.*, action taken pursuant to official municipal policy. *See Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *Connick v. Thompson*, ––– U.S. –––, 131 S. Ct. 1350, 1359 (2011); *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 420-21 (D.C. Cir. 1996); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) ("[W]hile Congress never questioned its power to impose civil liability on municipalities for their *own* illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*.") (citation omitted). Such

---

[2] Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage" of any state or the District of Columbia "subjects, or causes to be subjected, any [person] . . . to the deprivation of any [federally protected] rights, privileges, or immunities . . . shall be [civilly] liable to the party injured." 42 U.S.C. § 1983.

4

"official municipal policy" can include "the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 131 S. Ct. at 1359; *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403-04 (1997).

A municipality's "fail[ure] to act affirmatively at all" can also constitute a municipal policy or custom for purposes of liability under § 1983 "when it can be said that the failure amounts to deliberate indifference towards the constitutional rights of persons in its domain." *Brown*, 520 U.S. at 418; *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (internal quotation marks and citation omitted). This theory of "deliberate indifference" has been described by the Supreme Court as:

> [w]here, in the most obvious example, the policymaker sits on his hands after repeated, unlawful acts of subordinate officers and that failure evidences a deliberate indifference to the rights of the municipality's inhabitants, the policymaker's toleration of the subordinates' behavior establishes a policy-in-practice just as readily attributable to the municipality as the one-act policy-in-practice described above. Such a policy choice may be inferred even without a pattern of acts by subordinate officers, so long as the need for action by the policymaker is so obvious that the failure to act rises to deliberate indifference.

*Brown*, 520 U.S. at 418 (internal quotation marks and citations omitted).

To state a claim of deliberate indifference, the plaintiff must plead facts sufficient to contend that a municipality, such as the District, knew or should have known of a risk that constitutional violations would occur, but did nothing. *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306-07 (D.C. Cir. 2003). Put simply, if a municipality adopts a policy of inaction when faced with actual or constructive knowledge that its agents will likely violate constitutional rights, it is "deliberately indifferent to a substantial risk of harm

5

[that] is equivalent to the intentional action that setting policy presupposes." *Brown*, 520 U.S. at 419; *Warren*, 353 F.3d at 39.

Last, plaintiff must plead facts to support an inference that some government custom or policy "caus[ed] an employee to violate another's constitutional rights." *Monell*, 436 U.S. at 692 (internal quotation marks omitted). In other words, plaintiff bears the burden of showing an "affirmative link such that a municipal policy was the moving force behind the constitutional violation." *Baker*, 326 F.3d at 1306 (internal quotation marks and citations omitted); *Warren*, 353 F.3d at 39. Unfortunately for the plaintiff, he has done none of these things. How so?

## II. Plaintiff's First Amendment Claim

Plaintiff alleges that the District, or "officers, agents, assistants or employees working under its supervision," denied him "access to the [c]ourts in violation of the First Amendment" by failing to correct his last name in its official records or remedy the lack of District of Columbia legal materials in Pamunkey's law library. Compl. ¶¶ 30-35, 40, 44-46, 51, 53. As a result of the District's failure to act, plaintiff asserts that he "was unable to effectively correspond with his attorney to raise a claim at his sentencing hearing that there were erroneous crimes on his pre-sentence report" or "research and bring colorable constitutional claims concerning his injuries" inflicted by the District and the Virginia defendants during incarceration. *Id.* ¶¶ 36-38, 41-42, 44, 48-50. Even if such allegations are sufficient to plead a constitutional violation, the Court holds that plaintiff fails to state a claim that a government policy or custom was the driving force behind the District's conduct here.

Relying on *Warren v. Dist. of Columbia*, 353 F.3d 36 (D.C. Cir. 2004), plaintiff argues that he has sufficiently alleged a District custom of inaction that caused the deprivation of his First Amendment right to access the courts.[3] Under a "deliberate indifference" theory of municipal liability, plaintiff asserts that, when the District "consistently and repeatedly fail[ed] to act by correcting its record of [p]laintiff's name and [providing] [p]laintiff with sufficient legal materials," it "was acting according to a custom of ignoring inmates." Compl. ¶ 51; Pl.'s Mem. in Opp'n to Def. Dist.'s Mot. to Dismiss or, in the Alt., for Summ. J. ("Pl.'s Opp'n") at 9-12, ECF No. 77. Plaintiff claims that the District's deliberate indifference to the constitutional rights of its inmates is exemplified by the fact that the District, including its Department of Corrections ("DOC") Director Patricia Britton, was informed by the plaintiff that he was suffering "injuries" because the District "had registered him under the wrong name" and "deprived [his] access to the courts," but the District "intentionally and knowingly failed to correct the [name] error" or take action with regard to the allegedly deficient Pamunkey law library. Compl. ¶¶ 31-35, 40, 46-47. Due to the District's "deliberate[] indifferen[ce] to the [First Amendment] injuries [he] sustained and the substantial risk that [his] constitutional rights would be violated by its failure to act," *id.* ¶ 51, the plaintiff argues

---

[3] It is important to note that the Supreme Court decision of *Iqbal* came down after the D.C. Circuit's opinion in *Warren*. Consequently, *Warren* must now be viewed in light of the Supreme Court's holding in *Iqbal*, namely that conclusory pleadings are no longer sufficient to state a claim on which relief may be granted. *See Iqbal*, 556 U.S. at 678-79; *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("[D]istrict judges . . . are obligated to follow controlling circuit precedent until either we, sitting en banc, or the Supreme Court, overrule it."); *Smith v. Dist. of Columbia*, 674 F. Supp. 2d 209, 213 n.2 (D.D.C. 2009).

that the District's "systemic violations of inmates' constitutional rights, resulting from their policies of inaction, caused [plaintiff] to suffer injuries." Pl.'s Opp'n at 11.

Accepting plaintiff's factual allegations as true for purposes of this motion, the Court finds that the plaintiff has not identified any facts illustrating a government practice or custom, or alleged how the District was deliberately indifferent in taking on such a practice, to sufficiently form the basis of liability under Section 1983. More specifically, plaintiff does not allege a violation of his constitutional right to access the courts, assuming that one occurred, resulting from a District custom of "ignoring inmates" that was "so widespread as to have the force of law," *Brown*, 520 U.S. at 404, nor does he sufficiently plead, outside of purported wrongful conduct as to him, a purposeful lack of response on the part of the District to the risk that inmates' constitutional rights were likely being deprived, *see Konah v. Dist. of Columbia*, 815 F. Supp. 2d 61, 75 (D.D.C. 2011).[4] Indeed, other than the isolated incidences that form the basis for this case, plaintiff does not point to any behavior on the part of the District toward other inmates that he alleges evidences a deliberate disregard for their constitutional rights. The law is clear that "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*" and "considerably more proof than [a] single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional

---

[4] *See also Atchinson v. Dist. of Columbia*, 73 F.3d at 422 ("[A] section 1983 complaint alleging municipal liability must include some factual basis for the allegation of a municipal policy or custom."); *Carter v. Dist. of Columbia*, 795 F.2d 116, 123-24 (D.C. Cir. 1986) (a custom must be pervasive to support municipal liability).

deprivation."[5] *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *see also Magliore v. Brooks*, 844 F. Supp. 2d 38, 43 (D.D.C. 2012). Plaintiff's allegations are simply not enough to clear the Rule 12(b)(6) hurdle. *Cf. Muhammad v. Dist. of Columbia*, 584 F. Supp. 2d 134, 139 (D.D.C. 2008) (holding that plaintiff had pleaded sufficient facts to illustrate municipal liability where District failed to take action against police officer who had been the subject of at least fourteen other complaints).[6]

In addition to his failure to sufficiently allege any custom of inaction, or deliberate indifference, on the part of the District, plaintiff also fails to plead facts to support an inference that such a practice was the moving force behind the alleged violation of his First Amendment rights. Indeed, aside from conclusory allegations that the District was "deliberately indifferent to [his] injuries," Compl. ¶ 51, plaintiff's factual contentions do not allege how such a practice by the District was the moving force behind the alleged

---

[5] *See also Jones v. Dist. of Columbia*, No. 11-215, 2012 WL 3024970, at *14 (D.D.C. July 25, 2012) ("Simply citing to [plaintiffs'] own experiences does not state a claim that [p]laintiffs were the victim of a policy or custom that caused them to suffer injury."); *Grissom v. Dist. of Columbia*, No. 11-1604, 2012 WL 1142555, at *5 (D.D.C. Apr. 6, 2012) (where plaintiff identified facts only relating to the single incident that formed the basis of her suit, and failed to identify other facts sufficient to support her section 1983 claim against the District, her claims were dismissed); *DuBerry v. Dist. of Columbia*, 582 F. Supp. 2d 27, 39 (D.D.C. 2008) (entering judgment for the District on plaintiff's claim that the District violated his Fifth Amendment rights because plaintiff had "not produced any evidence that the Department's alleged discriminatory employment practices impacted a single employee or prospective employee other than himself"); *Sanders v. Dist. of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007) (granting District's motion to dismiss plaintiff's First Amendment retaliation claims under section 1983 where plaintiff did not allege that the District "had a policy or practice of retaliating against employees for exercising the right to free speech" or "point[] to any other employee who suffered similar retaliation").

[6] And this is simply not the case where "the need for action by the policymaker is so obvious that the failure to act rises to deliberate indifference." *Brown*, 520 U.S. at 418.

violation of his constitutional right to access the courts.[7] Mere legal conclusions, cast in the form of factual allegations, will not suffice to state a claim against the District; rather, "[p]laintiff must identify supporting facts, not simply restate the required elements." *Grissom v. Dist. of Columbia*, No. 11-1604, 2012 WL 1142555, at *5 (D.D.C. Apr. 6, 2012); *Hernandez v. Dist. of Columbia*, 845 F. Supp. 2d 112, 117 (D.D.C. 2012) ("[A]s other courts in this district have concluded, the fact that the case arises under section 1983 does not relieve a plaintiff of his obligation to satisfy the criteria established in *Iqbal* and *Twombly*.") (citation omitted); *Iqbal*, 556 U.S. at 678 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks and citation omitted). Thus, even if the District's failure to correct the record of plaintiff's name, or remedy the alleged insufficiencies of the PRJA law library, are violations of plaintiff's First Amendment rights, without any factual support to connect the alleged injuries suffered by plaintiff to an existing, unconstitutional policy of ignoring inmates, plaintiff fails to state a claim under section 1983.[8]

---

[7] *See Brown*, 520 U.S. at 403 ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal policy or custom that *caused* the plaintiff's injury.") (emphasis added) (internal quotation marks and citations omitted); *Warren*, 353 F.3d at 38 (a plaintiff suing a municipality under § 1983 "must allege not only a violation of his rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation"); *Carter*, 795 F.2d at 122 (D.C. Cir. 1986) (plaintiff must show a course deliberately pursued establishing affirmative link between policy and alleged constitutional violation).

[8] Even assuming, *arguendo*, that plaintiff had adequately alleged that the District adopted a practice of ignoring inmates that caused plaintiff's injuries, he may not have pled facts sufficient to support an inference that the District had actual or constructive knowledge of likely constitutional violations. More specifically, although plaintiff alleges that he notified the District on multiple occasions regarding the use of his incorrect last name and the deficiencies of the Pamunkey law library, Compl. ¶¶ 31-35, 40, 46, he does not assert

### III. Plaintiff's Claims of Fifth and Eighth Amendment Violations

In addition to First Amendment violations, plaintiff also claims that the District is directly and vicariously liable under 42 U.S.C. § 1983 for the deprivation of his Fifth and Eighth Amendment rights by the Virginia defendants. Compl. ¶¶ 23, 54-79. More specifically, plaintiff alleges that, while he was incarcerated at Pamunkey, the Virginia defendants subjected him to cruel and unusual punishment and violated his right to due process by putting him in administrative segregation without notice or a hearing, denying him access to legal calls to his attorney, placing him in unnecessary and abrasive belly chains, handcuffs and leg irons during his recreation time, forcing him to remain in a cell containing the feces and urine of other inmates, and refusing to give him his blood pressure medication for days at a time. *Id.* Plaintiff contends that, under a theory of municipal liability, the District is liable for the allegedly unconstitutional actions of the Virginia defendants on the basis that the latter served as the District's "agents" pursuant to an agreement under which "the PRJA was, among other things, to house and care for District of Columbia inmates." *Id.* ¶¶ 22-23.

Even if there were some basis to argue a violation of plaintiff's Fifth and Eighth Amendment rights, or that the Virginia defendants can properly be considered "agents" of the District, municipal liability under § 1983 may not rest on a theory of either

---

that such notice included any kind of specificity as to the consequent deprivations he was suffering from. Rather, plaintiff only alleges that he informed the District that he was suffering from "injuries" as a result of its inaction, including "the loss of legal and personal mail." *Id.*; *see Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.") (internal quotation marks and citation omitted).

11

vicarious liability or respondeat superior. *Monell*, 436 U.S. at 691; *Graham v. Davis*, 880 F.2d 1414, 1421 (D.C. Cir. 1989). Instead, § 1983 imposes liability on a municipality when its own alleged misconduct, *i.e.*, action taken pursuant to municipal policy or custom, causes a deprivation of a person's rights. *See Carter v. Dist. of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986) ("To succeed, a plaintiff must show a course deliberately pursued by the city, as opposed to an action taken unilaterally by a nonpolicymaking municipal employee.") (quoting *Oklahoma City*, 471 U.S. at 829) (internal quotation marks omitted). As such, the Court addresses only whether plaintiff has pled sufficient facts to state a claim against the District under *Monell*.

Although the complaint contains numerous allegations about the injuries plaintiff sustained at the hands of the Virginia defendants, it fails to identify a policy, practice or custom on the part of the District undergirding the Virginia defendants' allegedly unlawful behavior. Indeed, the complaint itself discredits the notion that the Virginia defendants were guided by any District policy at all, stating, "[a]t all times relevant herein, the Virginia [d]efendants acted pursuant to the policies, regulations or decisions officially adopted or promulgated by those in the PRJA whose acts may fairly be said to represent official policy or were pursuant to the practices and customs of the PRJA." Compl. ¶ 17. Although a complaint "need not plead law or match facts to every element of a legal theory," *Sparrow*, 216 F.3d at 1115 (citations omitted), it must contain "some factual basis for the allegation of a municipal policy or custom," *Atchinson*, 73 F.3d at 422; *see also Gabriel v. Corr. Corp. of Am.*, 211 F. Supp. 2d 132, 138-39 (D.D.C. 2002) ("The mere assertion that the [municipality's employee or agent who caused the harm]

was acting fully within the scope of his employment and pursuant to the policies of defendant . . . is not specific enough to withstand dismissal.") (alteration in original) (internal quotation marks and citation omitted). Even a liberal reading of the complaint by this Court, accepting all of plaintiff's contentions as true, does not make out an indication of how any particular District policy or practice specifically required or otherwise caused the constitutional deprivations plaintiff alleges. *See Miller v. Barry*, 698 F.2d 1259, 1261 (D.C. Cir. 1983) (affirming dismissal where plaintiff "pointed to no rule, procedure or policy of the District which would require or even permit the alleged unconstitutional actions"); *Smith v. Fenty*, 684 F. Supp. 2d 64, 67 (D.D.C. 2010) ("[P]laintiff's potential municipal liability claim fails . . . because it is premised on the allegedly independent, rogue acts of [prison] employees rather than on an identifiable policy or custom of the District.") (citation omitted); *Burnett v. Sharma*, 511 F. Supp. 2d 136, 142 (D.D.C. 2007) ("The amended pleading does not allege that an official District of Columbia policy or custom caused plaintiff to suffer the deprivation of a constitutional or federal statutory right, and this pleading defect is fatal."). Plaintiff's Fifth and Eighth Amendment claims against the District thus fail to state a claim for municipal liability under 42 U.S.C. § 1983.[9]

---

[9] Plaintiff also claims that: (1) Virginia defendant Claveau was "deliberately indifferent" to his injuries when he "repeatedly ignored" plaintiff's request to phone his attorney, Compl. ¶¶ 65-66, and (2) the Virginia defendants were "deliberately indifferent" to his injuries when "they did nothing to clean his cell or repair his toilet and sink" despite their knowledge that "exposure to the stench of the feces and urine of other inmates caused [his] blood pressure to rise to hazardous levels," *id.* ¶¶ 70-74. Plaintiff does not sufficiently allege, however, that the District had any actual or constructive knowledge regarding the Virginia defendants' alleged behavior, nor does he tie such behavior to any

## IV. Plaintiff's Fourteenth Amendment Claim

Finally, plaintiff alleges that the District "subjected [p]laintiff to violation of his right to due process" and have "caused plaintiff to suffer physical injuries, severe emotional distress, and damages" in violation of his Fourteenth Amendment rights. Compl. ¶ 79.

The Fourteenth Amendment, however, is not applicable to the actions of the District or its officials or employees. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) ("The Fifth Amendment, which is applicable in the District of Columbia, does not contain an equal protection clause as does the Fourteenth Amendment, which applies only to the states."); *Powers-Bunce v. Dist. of Columbia*, 659 F. Supp. 2d 173, 179 n.6 (D.D.C. 2009). Accordingly, plaintiff's Fourteenth Amendment claim against the District must also be dismissed.[10]

---

custom of inaction by the District. *See Jones*, 2012 WL 3024970, at *14 (dismissing suit where plaintiffs had only alleged municipal employee action as to themselves, but failed to cite any official municipal policy, or a practice "pervasive enough to be so common and settled as to be considered a custom or policy") (internal quotation marks and citation omitted). Indeed, "a plaintiff must do more than allege in a conclusory fashion that a defendant was deliberately indifferent." *Gabriel*, 211 F. Supp. 2d at 139.

[10] Because the Court dismisses this action for failure to state a claim under 42 U.S.C. § 1983, it does not reach the merits of the District's motion to dismiss on the grounds of *insufficient physical injury under the Prison Litigation Reform Act*.

14

## CONCLUSION

For the foregoing reasons, the court grants the District's Motion to Dismiss [#74] is hereby GRANTED. An appropriate order shall accompany this Memorandum Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge